IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KENTFIELD MEDICAL HOSPITAL CORP,** | No. C-01-2989-VRW |
| Plaintiff, | ORDER. |
| v | |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

Kentfield Medical Hospital Corp (Kentfield) initiated this action to recover taxes paid under protest.  At issue is whether Kentfield properly treated its psychologists as independent contractors rather than employees.  An IRS audit concluded that Kentfield's psychologists were employees rather than independent contractors and assessed employee taxes (FICA and FUTA) on Kentfield.  Kentfield moves for summary judgment on its claim for reimbursement of taxes paid.  See Doc # 6.

//

//

I

The following factual summary is undisputed except as specifically noted below.

In 1988, Continental Medical Systems, Inc (CMS) acquired Kentfield Medical Hospital Corp, a rehabilitation hospital in Marin County.  After acquisition, Kentfield remained a separate, wholly-owned subsidiary of CMS.  The IRS audited Kentfield and several other hospital subsidiaries of CMS.  At issue in Kentfield's audit was whether Kentfield properly treated its psychologists as independent contractors during tax years 1991 through 1995.  A description of the relationship between Kentfield and its psychologists informs this determination.

Kentfield's contracts with the individual psychologists were substantially similar, although the particular details differed.  Each stated that the individual was an independent contractor and responsible for the payment of his or her taxes on that basis.  Kentfield did not provide health or life insurance.  For one psychologist, James Wilson, Kentfield provided malpractice insurance, but also required Wilson to obtain additional malpractice insurance.  Each psychologist received office space and clerical support.  Kentfield paid for some continuing education, including attending conferences and purchasing educational materials.  Kentfield also provided the psychologists with books, videos and other supplies necessary for their work.  Most billing was done by Kentfield; psychologists were not allowed to patients directly with the exception of certain Medicare billings.

2

The psychologists' primary responsibility was providing patient care, including "psychological and neurophysiological services, cognitive remediation, behavioral services, counseling, psychotherapy, [i e] the whole range of psychological services that a psychologist would provide to a medical population." Wilson Depo (Doc # 8, Exh 14a) at 24:2-7. Each psychologist signed an agreement outlining his or her goals and responsibilities. Wilson and later Dawn Osterweil also had supervisory responsibilities. As supervisors, they split their time between administrative duties and patient care. All the psychologists were required to provide services under supervision; their direct supervisors varied depending on the type of work performed for Kentfield. The psychologists were also required to provide daily records and progress notes and comply with all hospital policies and regulations. All the psychologists were required to attend inservice training and assist in marketing efforts, including attending conferences, writing articles and making speeches. Finally, the psychologists were required to sit on committees as necessary.

Several psychologists were paid an hourly rate for up to a certain number of hours a week; this number was typically 20-25 hours per week. Other psychologists were paid a yearly salary and expected to work 35 to 40 hours per week. The psychologists were required to work 48 weeks per year. Several psychologists were also allowed to maintain private practices so long as those practices did not interfere with their work at Kentfield.

While Kentfield treated all of its psychologists as

3

independent contractors during the audit period, for ten months in 1987 through 1988, Kentfield treated one psychologist as an employee. In August or September 1987, prior to CMS's acquisition of the hospital, James Wilson, a psychologist, was hired as an employee. Wilson was issued a W-2 for 1987 and Kentfield paid employment taxes for him as if he were an employee. Kentfield also provided employee benefits such as health insurance and vacation and sick leave. After CMS acquired Kentfield, it determined that Wilson was more properly treated as an independent contractor than an employee. On July 1, 1988, Kentfield officially changed Wilson's status as an employee to an independent contractor. When Wilson first arrived at Kentfield, he was the only psychologist; as Kentfield hired more psychologists, Wilson's role became more administrative. The parties dispute whether Wilson always had a significant administrative role or whether that evolved over time as Kentfield's psychological services department grew.

II

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. The burden of establishing that there is no genuine issue of material fact lies with the moving party. <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986). If the nonmoving party would bear the burden of proof at trial, the moving party may meet its burden by pointing out - not by a conclusory statement but by demonstration - the absence of evidence to support the

**4**

nonmoving party's case. Id at 325-26. Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

Kentfield bases its summary judgment motion on § 530, a "safety valve" provision of the tax code which allows good faith employers who mistakenly treat employees as independent contractors relief from paying past due employment taxes. As an alternative basis for summary judgment, Kentfield asserts that the psychologists were, in fact, properly treated as independent contractors. The court considers these arguments in turn.

A

Kentfield first argues that it is entitled to § 530 relief. Section 530 allows employers to rely upon their good faith treatment of individuals as independent contractors by allowing such employers to avoid prior employment tax liability if they had a reasonable basis for treating their workers as independent contractors, even if their workers were, in fact, properly treated as employees. Section 530 provides, in pertinent part:

>    (a) Termination of certain employment tax liability:
>    (1) In general. -If-
>    (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
>    (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,
>
>    then for purposes of applying such taxes for such periods with respect to the taxpayer, the individual shall be deemed not to be an employee unless the

5

>           taxpayer had no reasonable basis for not treating such
>           individual as an employee.
>           * * *
>           (3) Consistency required in the case of prior tax
>           treatment -
>           Paragraph (1) shall not apply with respect to the
>           treatment of any individual for employment tax purposes
>           for any period ending after December 31, 1978, if the
>           taxpayer (or a predecessor) has treated any individual
>           holding a substantially similar position as an employee
>           for purposes of the employment taxes for any period
>           beginning after December 31, 1977.

Pub L 95-600 § 530, as subsequently amended by Pub L 96-167 § 9(d); Pub L 96-541 § 1; Pub L 97-248 Title II, § 269(c)(1)-(2); Pub L 99-514 § 2, Title XVII § 1706(a) (uncodified note to 26 USC § 3401). Thus, in order to qualify for § 530 relief, Kentfield must demonstrate: (1) that Kentfield treated its workers as independent contractors and filed all appropriate tax forms for its workers as if they were independent contractors (the reporting consistency test) (2) that Kentfield did not treat any other worker holding a substantially similar position as an employee (the substantive consistency test) and (3) that Kentfield had a reasonable basis to treat its workers as independent contractors.

  The United States asserts that Kentfield does not meet the reporting consistency test with respect to James Wilson and does not meet the substantive consistency test with respect to all of the psychologists because of Wilson's brief treatment as an employee. First, the United States asserts that because Wilson was treated as an employee from September 1987 to July 1988, Kentfield does not satisfy § 530(a)(1)(A), which requires that each individual cannot be treated as an employee for "any period." Kentfield counters that, read in its entirety, §

6

530(a)(1) is limited to the taxable periods at issue. Kentfield relies upon the final phrase in § 530(a)(1), which refers to "apply[ing] such taxes such periods", i e, the taxable periods at issue. This phrase, however, does not negate the expansive plain language of § 530(a)(1)(A), which states unambiguously that "the taxpayer [must] not treat an individual as an employee for any period." The court finds that in order to satisfy the reporting consistency test with respect to each psychologist, Kentfield must demonstrate that it did not treat the psychologist as an employee at any time during the psychologist's tenure at Kentfield. Accord <u>Halfhill v IRS</u>, 927 F Supp 171, 176 n4 (ED Pa 1996)(stating in dictu, that plaintiff did not meet reporting consistency test because he treated one individual as an employee in 1978, when the audit year in question was 1990).

Kentfield also argues that a de minimus exception should apply to the reporting consistency test. It asserts that treating Wilson as an employee for a brief period of time before CMS acquired Kentfield is merely a de minimus inconsistency with § 530 and should be ignored. Initially, the court notes that whether CMS owned Kentfield is irrelevant to this determination; the court looks solely to the taxpayer at issue, in this case, Kentfield Medical Hospital. The tax status of that entity did not change when CMS acquired Kentfield.

In support of its de minimus exception argument, Kentfield cites legislative history which suggests that § 530 should be read liberally to favor the taxpayer. This legislative history, however, concerned only the reasonable

7

basis test. See HR Rep 95-1748, 95th Cong 2d See at 5 ("The committee intends that this reasonable basis requirement be construed liberally in favor of taxpayers."). As compliance with both the reporting consistency and the substantive consistency tests is a prerequisite to the reasonable basis test, this legislative history is not relevant to whether a de minimus exception applies. In addition, the case law does not support Kentfield's position. While the Ninth Circuit in at least one case stated that § 530 should be liberally construed, in that case the IRS had stipulated that plaintiff met the substantive and reporting consistency tests. See Springfield v United States, 88 F3d 750, 753 (9th Cir 1996). Indeed, in support of its statement, the Ninth Circuit cited the legislative history discussed above which mentions only the reasonable basis test. See id. In addition, in Halfhill, plaintiff treated his son, at the time his only worker, as an employee for 1978 and part of 1979; plaintiff later expanded his trucking business and hired several truck drivers as independent contractors. 927 F Supp at 176. The court did not find a de minimus exception treating one individual as an employee over ten years before the taxable year in question. See id. Finally, the plain language of the statute requires that Kentfield cannot have treated an individual as an employee for any period. This expansive language is not consistent with a de minimus exception.

With respect to the substantive consistency test, Kentfield must demonstrate that treated all "substantially similar" employees as independent contractors for any period

8

after December 31, 1978.  Again, Kentfield argues that a de minimus exception should apply.  The court finds no support in the plain language of the statute or case law for such a de minimus exception.  Having treated Wilson as an employee for 10 months in 1987 and 1988, Kentfield must show that the other psychologists did have substantially similar positions to Wilson in order to meet the substantive consistency test with respect to all psychologists.

Kentfield argues that Wilson had significant administrative duties that other psychologists did not have.  During the audit years, Wilson was the director of psychological services.  He spent approximately 40% of his time on administrative matters.  Sixty percent of his time was spent on direct patient care.  It is not clear what the exact proportion was in 1987 and 1988 when he was treated as an employee; Wilson testified that his administrative duties grew over time.  Even as the director, Wilson's primary responsibility was patient care.  The other psychologists had administrative responsibilities, although not as time-consuming as Wilson's.  It is not clear, however, that the psychologists' positions were not substantially similar to Wilson's role when he first began at Kentfield.  Both parties rely upon Wilson's testimony; this testimony is ambiguous regarding his duties at that time.  Specifically, Wilson states:

> As the department grew, as I developed the program and services, more people were hired.
> * * *
> [Director of Psychological Services] was sort of a role that I fell into because I was - I was soft of given the designation of developing the program, the head injury program, psychological side and behavioral side

9

```
        in terms of treatments and services.
            So at that point, given that I was the only
        employee initially, I was the only employee and the
        director of the department.  But as the department
        grew, that role developed a little bit more and I had
        supervisory responsibilities and so forth.
```
Wilson Decl (Doc # 8, Exh 14a) at 22:23-23:18.

Kentfield asserts that Wilson was always the de facto director of psychological services and that this position, by definition, was different from the other psychologists. This is not clear; from Wilson's own testimony, it appears that his administrative responsibilities were significantly less when he first began work at Kentfield. Kentfield also relies upon <u>Northern Louisiana Rehabilitation Center v United States</u>, in which the court determined that medical directors, essentially consultants at the hospital, did not perform substantially similar work to a staff physician who was required to work full time for the hospital and spent approximately 25% of her time to administrative duties. 179 F Supp 2d 658, 666 (WD La 2001). The primary difference between these groups, however, was that the medical directors were simply consultants to the hospital with private practices; in addition, the hospital did not "dictate the means or manner of their work." Id. The difference was not solely the amount of administrative work performed. Kentfield has not demonstrated that it has met the substantive consistency requirement and is not, therefore, eligible for § 530 relief.

//

**B**

As an alternative ground for summary judgment, Kentfield argues that the psychologists were, on the merits, independent contractors. With respect to the psychologists' terms and conditions of employment, the parties do not have disputes of facts; they simply dispute how the facts should be applied in this case. The issue may fairly be stated, therefore, as a matter of law. Kentfield must therefore demonstrate that the psychologists were independent contractors.

The Internal Revenue Service uses a 20-factor test in determining whether a worker was an employee or an independent contractor. See Rev Rul 87-41. In Nationwide Mutual Ins Co v Darden, the Supreme Court stated that the fundamental question was whether "the hiring party[] [had a] right to control the manner and means by which the product [was] accomplished." 503 US 318, 323 (1992). The Supreme Court found the following factors relevant to this inquiry:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id at 323-24. The threshold amount of control necessary to demonstrate an employer-employee relationship is lessened when the hired party is a professional. See James v Commissioner, 25 TC 1296, 1301 (Tax Ct 1956).

Here, taking into account the lesser amount of control Kentfield necessarily has over the psychologists as professionals, Kentfield had sufficient control over the means and methods by which the psychologists worked to demonstrate that the psychologists were employees. Kentfield hired each psychologist at an hourly or yearly rate; with the exception of some Medicare biling, the psychologists did not bill their clients separately for their services. While Kentfield did not provide significant employee benefits such as vacation or health or life insurance, this factor weighed against the others is insufficient to demonstrate an independent contractor relationship.

Kentfield provided significant support services, including staff, office space and all tools and materials necessary for the psychologists work. All the work was performed at Kentfield. With the exception of the director of psychological services, the psychologists did not have any role over the process of hiring or firing support staff. The psychologists had control over the specific times they worked, although they were required to respond promptly to referrals; some were required to work full time while others had the flexibility to determine the number of hours they worked. The psychologists were required to work 48 weeks per year and had ongoing relationships with Kentfield. The psychologists were supervised by other psychologists and had to submit daily reports of their work.

In addition, while the psychologists already had significant training and skill, Kentfield required the

12

psychologists to continue to enhance their skills through further training and conferences. Kentfield paid for this additional training and attendance at conferences. Taking all these factors into account, the court finds that Kentfield has not demonstrated that it did not have the right to control the means and methods by which the psychologists performed their work. Thus, the court finds that Kentfield has not met its summary judgment burden with respect to the psychologists.

### III

In summary, the court DENIES Kentfield's motion for summary judgment (Doc # 6) with respect to the claims regarding the psychologists.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Judge